**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| BRIANNA KAUMANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 15-1395-JAR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Brianna Kaumans' application for a period of disability and disability insurance benefits under Title II of the Social Security Act.[1] Because the Court finds that Defendant Commissioner's findings are supported by substantial evidence, the Court affirms Defendant's decision.

**I.    Procedural History**

On September 27, 2012, Plaintiff protectively applied for a period of disability and disability insurance benefits, alleging an onset date of April 15, 2011. Plaintiff was last insured for disability insurance benefits on December 31, 2017. Plaintiff's applications were denied initially and upon reconsideration; after a hearing, the ALJ issued a decision finding that Plaintiff was not disabled and the Appeals Council denied plaintiff's request for review. Plaintiff then sought judicial review.

---

[1] 42 U.S.C. §§ 401–434.

## II. Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[2] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[4]

## III. Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[5] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[6] The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[7] If the ALJ determines the claimant is disabled or not disabled at any step along the

---

[2] *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).

[3] *White v. Barnhart*, 287 F.3d 903, 904 (10th Cir. 2001) (quoting *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Id.*

[5] 42 U.S.C. §§ 423(d)(1)(A); § 416(i).

[6] *Id.* § 423(d)(2)(A).

[7] *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

way, the evaluation ends.[8]

Plaintiff does not challenge the ALJ's determinations at step one that Plaintiff has not engaged in substantial gainful activity[9] since April 15, 2011, the alleged onset date. Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has a medically "severe" impairment: degenerative disc disease of the cervical spine. Nor does Plaintiff challenge the ALJ's determination at step three that Plaintiff's impairment does not meet or medically equal a listing.

But Plaintiff challenges the ALJ's determination of Plaintiff's Residual Functional Capacity ("RFC"), which Plaintiff argues is erroneous because the ALJ improperly accorded little weight to the opinion of her treating physician, Dr. Sara Johnston.

## IV. Discussion

The ALJ found that Plaintiff has the RFC to perform light work in that:

she can lift and carry up to 10 pounds occasionally and frequently. She can stand or walk 6 hours our of an 8-hour workday. She can sit 6 hours out of an 8-hour workday. She can occasionally climb ramps and stairs, but never climb ladders, ropes of scaffolds. She can balance frequently, and can occasionally stoop, kneel, crouch and crawl. She can occasionally perform bilateral overhead reaching. She should avoid all exposure to hazards, such as machinery and heights. The claimant should avoid concentrated exposure to vibration. The claimant will require a sit-stand option that allow her to change positions every 30 to 45 minutes, and a stand/sit option that allows her to change positions every 20 to 30 minutes.

Plaintiff argues that the ALJ improperly accorded little weight to the opinion of her treating physician, Dr. Sara Johnston. In a letter dated March 26, 2012, Dr. Johnston opined that Plaintiff could work only one to two hours a day with a ten-pound weight limit; and she opined

---

[8]*Id.*

[9]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

that Plaintiff was limited to sitting two hours continuously, standing two hours intermittently and walking one hour intermittently a day.  On June 2, 2014, Dr. Johnston provided a Medical Source Statement in which she opined that Plaintiff could not sit, stand or walk long enough to perform sedentary work, and would miss more than four days of work a month.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."[10]  A treating source provider's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."[11]  But if it is "deficient in either respect, it is not entitled to controlling weight."[12]  And, even if the opinion of a treating provider is not worthy of controlling weight, it must still be accorded deference and must still be evaluated in light of the factors set forth in the relevant regulations.[13]

In *Goatcher v. United States Department of Health & Human Services*,[14] the Tenth Circuit directed that the ALJ consider the following factors in determining what weight to give any medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the

---

[10]*Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).

[11]*Id.* (citing 20 C.F.R. § 404.1527(d)(2)).

[12]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing SSR 96- 2p, 1996 WL 374184, at *5 (July 2, 1996)).

[13]*Hamlin*, 365 F.3d at 1215.

[14]52 F.3d 288, 290 (10th Cir. 1995).

physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[15]

Here, Dr. Johnston was Plaintiff's treating provider and primary physician from April 2011 through June 2014, although the treatment records indicate that Dr. Johnston only saw Plaintiff once in 2013. Dr. Johnston first saw Plaintiff in April 2011, after she had sustained a cervical spine sprain and post-concussion syndrome from a light fixture that fell on her head. Thereafter, Dr. Johnston and other consulting physicians examined and treated Plaintiff for limited range of motion and neck, back and shoulder pain resulting from the injury, ordering physical therapy, aerobic exercises, and at times, administering cervical epidurals, trigger point or nerve block injections for the pain.

During the course of her treatment, Dr. Johnston physically examined Plaintiff and documented objective findings and diagnoses based on her examinations and the MRIs, x-rays and other tests she repeatedly ordered. From July 2011 on, electrodiagnostic studies and MRIs revealed only minor abnormalities. An electrodiagnostic study ordered by Dr. Kossow, a consulting physician, in July 2011 showed no evidence of abnormalities. An MRI of the cervical spine in September 2011 revealed only slight central disc protrusion, a mild disc bulge and congenital partial fusion of the C2-C3 vertebral bodies; and an MRI of the thoracic spine in September 2011 revealed only mild posterior bony ridging and disc bulge at T3-4 and T4-5, and dextroconvex scoliosis. X-rays in February 2012 showed some loss of the normal curvature in

---

[15]*Id.* (citing 20 C.F.R. § 404.1527(d)(2)–(6)).

the cervical spine, but the vertebral bodies and intervertebral disc spaces were normal. And an April 2014 MRI revealed levocurvature of the lumbar spine, a tiny left peracentral annular tear and a small disc protrusion between two vertebrae, but no significant narrowing of the spine's central canal or opening through which nerve roots exit the spine; nor was there any definite nerve root compression.

Despite these minimal clinical findings, there was medical evidence that Plaintiff suffered restricted range of motion, muscle tightness and limited flexibility, as well as pain. In May 2011, Plaintiff's range of motion was so limited that Dr. Johnston opined that Plaintiff was not able to return to work at that time. By June 2011, Dr. Johnston determined that Plaintiff had improved range of motion, but a limited capacity to lift. Plaintiff began a course of physical therapy in June 2011, but in July 2011, Dr. Kossow recommended that Plaintiff cease physical therapy because it worsened her pain. And in October and November 2011, Dr. Samir Fahed administered cervical epidurals to relieve Plaintiff's pain.

The pain management was effective, such that in January 2012, Dr. Mollman, a consulting physician, found that Plaintiff had full range of motion and upper extremity strength and recommended aggressive physical therapy and a neck exercise program. However, one month later, in February 2012, Plaintiff had a setback; Dr. Johnston's physical examination revealed decreased range of motion in all planes. In March 2012, Dr. Johnston opined that Plaintiff could only work one to two hours a day with a ten pound weight limit, and could sit two hours continuously, stand two hours intermittently and walk one hour intermittently. Dr. Johnston also referred Plaintiff for a second course of physical therapy, three sessions a week through May 2012. Again, Plaintiff experienced improved range of motion, but also experienced

increased pain.  Dr. Johnston had Plaintiff discontinue physical therapy in August 2012.

In August 2012, Plaintiff had an evaluation at Mayo Clinic.  They noted that her spinal x-rays revealed limited degeneration, and found that Plaintiff had cervical spine range of motion of thirty degrees as well as pain.  They recommended light aerobic activity and physical therapy.  Like the other physicians, the Mayo Clinic physicians opined that Plaintiff was not a candidate for surgery.  They further advised that there was unlikely to be one definitive treatment providing symptomatic pain relief.

In September 2012, Dr. Johnston referred Plaintiff for a third round of physical therapy, but when Plaintiff's insurance authorization expired later that month, Plaintiff was unable to afford the cost of continued physical therapy.  Other than a visit in May 2013, in which Dr. Johnston noted decreased range of motion in her neck and spine, as well as mild pain on palpation of the neck muscles, Plaintiff did not see Dr. Johnston in 2013.  In January 2014, Plaintiff gave birth to her sixth child; two weeks later she was admitted to the hospital for treatment of a pulmonary embolism.

Plaintiff's next visit to Dr. Johnston was in April 2014.  Dr. Johnston's examination revealed moderate pain with palpation, diminished knee jerk bilaterally, decreased lower extremity strength, but normal gait and sensation and a negative straight leg rest.  In May and June 2014, Plaintiff resumed a course of physical therapy; but she told Dr. Johnston in June 2014 that the physical therapy was not helping.  In June 2014, Dr. Johnston's examination revealed that Plaintiff had a positive straight leg raise on the left, reduced strength in her left lower extremity, and pain with palpation.  Dr. Johnston also noted, apparently based on Plaintiff's report, that Plaintiff had good and bad days when it came to pain.

In June 2014, Dr. Johnston opined in a Medical Source Statement that Plaintiff could not perform sedentary work, could rarely lift ten pounds, had postural restrictions and could sit for a total of two hours and stand for less than two hours during an eight-hour workday, with need for breaks every 20 to 30 minutes.

In evaluating Dr. Johnston's opinions, the ALJ properly considered the medical evidence, including Dr. Johnston's treatment records, in determining what weight to accord Dr. Johnston's opinion. While Dr. Johnston opined that Plaintiff could not work a sedentary job, could sit for no more than two hours and stand less than two hours, needing breaks every 20 to 30 minutes, Dr. Johnston's treatment records do not reflect the basis for those opinions.

To be sure, Dr. Johnston's treatment records reflect that Plaintiff had limited range of motion and diminished strength, but those conditions generally improved with physical therapy and/or pain management. On the other hand, Dr. Johnston's treatment records consistently reflect that Plaintiff experienced pain, in varying degrees, upon palpation, and consistently reflect that Plaintiff reported experiencing pain. Pain management was effective; but physical therapy aggravated the pain.

The ALJ's RFC acknowledged that Plaintiff had limited range of motion and diminished strength, as well as pain, in limiting Plaintiff to light work, with a ten-pound weight restriction and a sit/stand as well as stand/sit options allowing her to periodically change positions. But, the ALJ gave little weight to Dr. Johnston's opinion that Plaintiff could not work a sedentary job at all and could not work more than two hours a day.

The Court concludes that the ALJ properly discredited Dr. Johnston's opinion, for neither Dr. Johnston's treatment records, nor the treatment records of others support her opinion. The

medical evidence simply did not support Dr. Johnston's opinion. Nor did the nonmedical evidence support Dr. Johnston's opinion. To be sure, Plaintiff's testimony about the degree and severity of her pain might support Dr. Johnston's opinion. But the ALJ found Plaintiff's subjective complaints not entirely credible; and Plaintiff does not challenge the ALJ's credibility determination in this proceeding.

Even if Plaintiff had challenged the ALJ's credibility determination, the Court finds that the ALJ properly discredited Plaintiff's testimony and subjective complaints. Among the many factors the ALJ may consider, are the claimant's activities of daily living.[16] As the ALJ explained, Plaintiff's reported activities of daily living belie her claims about the degree and severity of her pain. To be sure, the nature of daily activities is only one of many factors to be considered by the ALJ when determining the claimant's credibility, and the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.[17] But while the ALJ should not place too much reliance upon the activities of daily living in determining RFC, in assessing credibility, the ALJ may properly consider a claimant's self-reported daily activities, when those reports are inconsistent with the claimant's testimony before the ALJ.[18]

Plaintiff argues that activities such as infrequently attending and walking around a

---

[16] *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (explaining that the court may consider: "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." (citing *Thompson v. Sullivan*, 987 F.2d 1482, (10th Cir. 1993)).

[17] *Thompson*, 987 F.2d at 1489–90.

[18] *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir.1992).

community festival, as well as caring for her children and pushing a stroller four blocks a day are minimal daily activities or sporadic diversions that are not inconsistent with disability. This is generally true. But Plaintiff minimizes the nature and extent of her self-reported daily activities. She reported more than minimal daily activities.

Plaintiff cares for seven children, ages 13, 8, 6, two five-year olds, a two-year old and an infant, albeit with some help from the older of these children and her husband. She described nursing her infant in the morning, waking her other children and helping them dress for school, fixing them breakfast, doing the dishes, driving some of the children to school, preparing lunch and sometimes dinner. She manages her own personal needs, attends church twice a week, and volunteers for church and school events, such as bake sales and carnivals. Although her husband and mother-in-law help her with household chores, shopping and meal preparation, Plaintiff's activities of daily living also include spending 20 hours a week caring for her mother's disabled foster son. Plaintiff cares for this disabled teenager in her home, checking his insulin levels, administering medications, diapering, preparing and feeding him meals, albeit with some assistance from her husband. The ALJ properly considered the extent of these admitted daily activities in discrediting Plaintiff's testimony.

Moreover, other than Plaintiff's discredited testimony and subjective complaints, there is no nonmedical evidence consistent with Dr. Johnston's opinion that Plaintiff can work no more than two hours a day. If Plaintiff cares for the disabled teenager seven days a week, that constitutes three hours of care per day, not to mention the time she spends caring for her seven young children, even if she does so with help from her spouse. Furthermore, the work Plaintiff describes as part of her activities of daily living is not just sedentary work, but involves walking,

sitting, standing, reaching, lifting, carrying, bending, driving and other movements.

Thus, the Court concludes that the ALJ did not err in giving little weight to Dr. Johnston's opinion, in that the opinion is not supported by substantial medical or nonmedical evidence in the record.  Although Plaintiff does not expressly challenge the ALJ's consideration of the opinion of state agency consultant Dr. Charles Hitchcock, the Court finds that the ALJ appropriately gave Dr. Hitchcock's opinion partial weight, in accepting some of his opined limitations, and in adding the limitation that Plaintiff would need to alternate sitting and standing positions, consistent with other medical and nonmedical evidence in the record.

**V.     Conclusion**

Because the Court finds that Defendant Commissioner's findings are  supported by substantial evidence, the Court affirms Defendant's decision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **AFFIRMED.**

**IT IS SO ORDERED.**

Dated: August 9, 2016

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE